**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JACQUELINE WALLNER, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

THE CAMPBELL'S COMPANY,

Defendant.

Case No. ________

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Jacqueline Wallner, individually and on behalf of all others similarly situated ("**Plaintiff**"), brings this class action lawsuit against defendant The Campbell's Company ("**Defendant**" or "**Campbell's**"), based upon Plaintiff's personal knowledge as to herself, the investigation of her counsel, and on information and belief as to all other matters.

## INTRODUCTION

1. Consumers who purchase food products labeled as made with a specific premium oil reasonably expect that the named oil is the sole oil used in the product. This expectation is especially strong when the product prominently features the oil on the front label and the ingredient list on the back identifies the oil as the *only* oil in the product.

2. Defendant manufactures, markets, distributes, and sells Kettle Brand potato chips, including products prominently labeled as "AVOCADO OIL" chips. The labeling and ingredient statements on these products unambiguously represent to health-conscious consumers that the chips are made with avocado oil, and only avocado oil.

3. Avocado oil is a premium cooking oil that commands a significantly higher price than lower-cost vegetable oils such as soybean oils and seed oils. The well-documented health

distinctions between avocado oil and seed oils are a primary driver of consumer purchasing decisions.

4. Consumers, including Plaintiff, purchase Kettle Brand Avocado Oil chip products at a premium price in order to obtain the health benefits associated with avocado oil, and to avoid the health risks associated with inferior oils. In choosing Defendant's products, customers reasonably rely on assurances on the package labeling which represent that avocado oil is the one, and only, oil used to make the products.

5. In July 2026, a peer-reviewed scientific study published by researchers at the University of California, Davis, Department of Food Science and Technology, found that 93% of avocado oil–labeled chip products tested, including products sold under the Kettle Brand, exhibited compositional patterns inconsistent with avocado oil and consistent with substitution or dilution using inferior vegetable oils.

6. Despite Defendant representing to consumers that avocado oil is the only oil used to make certain Kettle Brand chips, testing reveals that these products contain oils other than avocado oil, exhibiting characteristics consistent with substitution of or dilution with vegetable or seed oils. This renders Defendant's labeling false and misleading.

7. Plaintiff and members of the proposed Class purchased Kettle Brand Avocado Oil chip products in reliance on Defendant's representations that avocado oil was the one and only oil used in the chips. Had Plaintiff and Class members known the products were not exclusively made with avocado oil, or not made with avocado oil at all, they would not have purchased the products and certainly would not have paid a premium price for them.

8. As a direct and proximate result of Defendant's false and misleading labeling, Plaintiff and Class members have suffered economic harm. They paid a premium price for products

they believed were made exclusively with avocado oil, when in fact the products contained cheaper, less desirable oils.

## PARTIES

9. Plaintiff **Jacqueline Wallner** lives in Oak Park, Illinois and at all times relevant to this case has been a citizen of Illinois.

10. Ms. Wallner purchased a bag of Kettle Brand Avocado Oil chips from Walmart's online store in the spring of 2026.

11. Prior to making her purchase, Ms. Wallner spent considerable time comparing different bags for the specific purpose of finding a brand that was made exclusively with avocado oil. Based on Defendant's labeling representations that the chips were made with avocado oil, and only avocado oil, Ms. Wallner selected and purchased Kettle Brand Avocado Oil chips. She paid a premium price of approximately $0.60 per ounce for the product.

12. Ms. Wallner would not have purchased Kettle Brand Avocado Oil chips and certainly would not have paid a premium for them had she known they were not exclusively made with avocado oil.

13. Defendant **The Campbell's Company** is a New Jersey corporation headquartered in Camden, New Jersey. The Campbell's Company manufactures, markets, distributes, and sells Kettle Brand products, including the avocado oil chip products at issue in this action. Defendant manufactures, markets, distributes, and sells Kettle Brand potato chips, including a line of products prominently labeled and marketed as "Avocado Oil" chips. These products include, but are not limited to: Avocado Oil Himalayan Salt Chips, Avocado Oil Spicy Kimchi Chips, Avocado Oil Special Sauce Chips, Avocado Oil Sea Salt Chips, and Avocado Oil Apple Cider Vinegar Chips.

14. Defendant conducts substantial business in the State of Illinois, including the marketing, distribution, and sale of Kettle Brand Avocado Oil chip products through retail stores, grocery stores, and online retailers accessible to Illinois consumers.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act of 2005 (CAFA), because (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one member of the class and Defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16. This Court has personal jurisdiction over Defendant because the injuries upon which the Plaintiff's claims are based occurred or arose out of activities that Defendant specifically engaged in within the State of Illinois. Defendant knowingly and intentionally distributed and sold its Kettle Brand Avocado Oil chip products in Illinois, and Plaintiff purchased the product from her home in Illinois, and it was delivered to her door.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of Illinois, including within this District.

## FACTUAL ALLEGATIONS

### A. The 2026 UC Davis Study

18. In 2026, researchers at the University of California, Davis, Department of Food Science and Technology, published a peer-reviewed scientific study titled "Authenticity of

avocado and olive oils used as ingredients in commercially processed foods" in the journal *Applied Food Research* (hereinafter, the "**UC Davis Study**").[1]

19. The UC Davis researchers selected 27 processed-food products that listed avocado oil as their only oil, including 14 chip products, 7 mayonnaise products, and 6 salad-dressing products.[2] They purchased two separate samples from different production lots of each product, testing a total of 54 avocado oil samples. To determine whether the samples contained authentic avocado oil, the researchers extracted the oil from each sample and examined its fatty acid and sterol profiles, which distinguish avocado oil from less desirable oils such as soybean and canola oil.[3]

20. The overall results were striking: 48 of the 54 avocado oil samples (89%) were not compositionally consistent with authentic avocado oil.[4] Among chip samples, 26 of 28 (93%) were classified as inconsistent with authentic avocado oil.[5] The chemical characteristics of these inconsistent samples were closer to cheaper vegetable oils, and one sample resembled soybean oil.[6]

21. In stark contrast, the researchers also tested 20 processed food samples labeled as made "with authentic olive oil," and 19 of the 20 (95%) were found to be compositionally

---

[1] Natalie Lopez-Alvarez et al., *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Res. 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

[2] *Id*. at 2.

[3] *Id*.

[4] *Id*. at 4.

[5] *Id*.

[6] *Id*. at 4, 6.

consistent with authentic olive oil in the finished product.[7] This dramatic disparity demonstrates that the widespread adulteration problem is specific to avocado oil products, not a general consequence of food processing.

22. The UC Davis Study employed rigorous, scientifically validated analytical methodology, including Soxhlet extraction with n-hexane, gas chromatography with flame ionization detection (GC-FID) analysis of fatty acid methyl esters and sterols, and comparison against Codex Alimentarius international standards for avocado oil composition.[8]

23. To determine if the samples tested were consistent with avocado oil, the UC Davis Study analyzed their fatty acid and sterol profiles. The avocado oil–labeled products found to be inconsistent with authentic avocado oil exhibited the following compositional anomalies: (a) low levels of fatty acids such as palmitic acid (C16:0), palmitoleic acid (C16:1), and cis-vaccenic acid (C18:1 n-7), and reduced beta-sitosterol, and clerosterol, together with elevated stearic acid (C18:0), campesterol, stigmasterol, delta-7-stigmastenol, and delta-7-avenasterol.[9] Rather than being "characteristic of authentic avocado oil . . . this pattern is more consistent with substitution or dilution using vegetable oils."[10] Indeed, many of the avocado oil–labeled samples had fatty acid profiles that were more consistent with polyunsaturated vegetable oil compositions or comparative samples containing canola, corn, soybean, and/or sunflower oil, rather than authentic avocado oil.[11]

24. The UC Davis Study specifically investigated whether food processing (i.e., frying) could explain the deviations observed in inconsistent samples. To do this, the researchers made

---

[7] *Id*. at 4.

[8] *Id*. at 2-3.

[9] *Id*. at 1.

[10] *Id*. at 4.

[11] *Id*. at 6.

potato chips in the laboratory, fried them in authentic avocado oil, extracted the oil, and tested it again but the chemical fingerprint did not meaningfully change. Laboratory frying experiments demonstrated that processing causes only minor changes in key markers; cis-vaccenic acid decreased by only 0.1% during frying, thereby confirming that processing cannot explain the substantial compositional deviations observed in the inconsistent products.[12]

25. All avocado oil products analyzed in the UC Davis Study listed avocado oil as the only oil used to make the product and did not disclose blended oil formulations.

26. Significantly, the UC Davis Study specifically tested avocado oil chip products, including Kettle Brand products. Both samples of Kettle Brand Classic Sea Salt Kettle Chips, labeled as made with avocado oil, were classified as not consistent with authentic avocado oil.[13] The UC Davis Study's findings demonstrate that the Kettle Brand Avocado Oil chip products contain oils other than avocado oil, despite Defendant's representations that avocado oil is the one and only oil used.

### B. Independent Third-Party Testing Corroborates the UC Davis Study's Findings Regarding Kettle Brand Avocado Oil Chip Products

27. In September 2026, Plaintiff separately sent two unopened bags of Kettle Brand Sea Salt Avocado Oil chips to Isotek Laboratories, LLC ("**Isotek Labs**"), an AOCS[14]-certified independent testing laboratory located in Oklahoma City, Oklahoma. Isotek Labs has "earned the

[12] *Id*. at 7.

[13] *See id*. Supplementary tbl. S3 (fatty acid profiles); Supplementary tbl.S4 (sterol profiles).

[14] AOCS stands for the American Oil Chemists' Society. An AOCS-certified lab is a laboratory recognized by the American Oil Chemists' Society as competent in official AOCS test methods for fats, oils, oilseeds, and related products.

trust of … industry leaders including JBS, Conagra, Smithfield Foods, Emery Oleochemicals, Sanimax, Scoular, Chevron, and ConocoPhillips."[15]

28. Isotek Labs performed fatty acid profile analysis on each sample using the AOCS Ce 1-62 analytical method, which is the same methodology recognized by the Codex Alimentarius international standards for determining fatty acid composition of edible oils. Like the UC Davis Study, the Isotek Labs analysis employed gas chromatography with flame ionization detection (GC-FID) to identify and quantify fatty acid methyl esters and compared the results against AOCS compositional ranges for authentic avocado oil. The samples were received on September 9, 2026, and were tested that same day. The laboratory issued Certificates of Analysis for both tests.

29. The Isotek Labs testing results corroborate the UC Davis Study's findings that Kettle Brand Avocado Oil chip products contain oils inconsistent with avocado oil. Analysis of the fatty acid profiles revealed that both samples exhibited the same compositional anomalies identified in the UC Davis Study as indicators of adulteration or substitution with inferior vegetable oils.[16]

30. Specifically, the Isotek Labs testing revealed critically deficient levels of palmitoleic acid (C16:1) across both Kettle Brand samples. The Codex Alimentarius Commission, the FAO/WHO international food-standards body, lists a palmitoleic acid range of 4.0–17.1% for avocado oil. The AOCS reference range used by Isotek Labs is 3.0–9.0%. The Kettle Brand samples tested at 1.18 to 1.19% palmitoleic acid—far below both ranges.

31. The Isotek Labs testing also revealed abnormally elevated levels of stearic acid (C18:0) in both Kettle Brand samples. The Codex Alimentarius Commission lists a stearic acid

---

[15] Isotek Labs, *Company Profile*, https://isoteklabs.com/company-profile/ (last visited September 17, 2026).

[16] *See* Lopez-Alvarez et al., *supra* note 3.

range of 0.1–1.3% for avocado oil. The AOCS reference range used by Isotek Labs is 0.4-1%. The Kettle Brand samples tested at 2.709% to 2.74%—again far outside the range of both the Codex and AOCS standards. As the UC Davis Study explained, elevated stearic acid, combined with reduced palmitoleic acid, is a compositional pattern "more consistent with substitution or dilution using vegetable oils" rather than authentic avocado oil.[17]

32. Additionally, the palmitic acid (C16:0) levels in the Kettle Brand samples ranged from 9.008% to 9.137%. This is below the range for palmitic acid identified by Codex Alimentarius Commission (11.0-26.0%), and at the very low end of the range identified by AOCS (9.0-18%).

33. The Isotek Labs analysis further compared the Kettle Brand sample results against the known fatty acid profiles of six different avocado cultivars (Hass, Fuerte, Bacon, Zutano, Reed, and Pinkerton). Even accounting for natural variability across avocado varieties, regions, and growing conditions, the palmitoleic acid, stearic acid, and palmitic acid levels in every Kettle Brand sample fell outside the compositional ranges for every avocado cultivar.

34. The Isotek findings make clear that, if avocado oil is present in Kettle Brand Avocado Oil chips, it is *not* the only oil. At a minimum, there is some other, inferior, oil in the chips. This conclusion is consistent with the UC Davis Study's finding that both Kettle Brand Avocado Oil samples tested by UC Davis were classified as "inconsistent with authentic avocado oil."[18] The independent Isotek Labs testing thus provides additional scientific confirmation that Defendant's Kettle Brand Avocado Oil chip products contain oil(s) other than avocado oil, despite Defendant's representations to the contrary.

[17] Lopez-Alvarez et al., *supra* note 3 at 4.

[18] *See* Lopez-Alvarez et al., *supra* note 3 at 3 and 4 (Table 1).

**C. Kettle Brand Avocado Oil Chip Product Labeling Represents to Consumers that Avocado Oil is the One and Only Oil Used in the Chips**

35. The front label of the Kettle Brand Avocado Oil chip products prominently features the words "MADE WITH AVOCADO OIL" in large, conspicuous lettering or alongside a picture of an avocado. On some of the Kettle Brand varieties, the words "AVOCADO OIL" are larger, and more prominent than the flavor itself. While the design varies by flavor, the front label of each product clearly communicates to consumers that the chips are made with avocado oil, thereby distinguishing these products from conventional potato chips cooked in cheaper, lower quality, and less healthy oils.




**Figure 1.** Front label of Kettle Brand Special Sauce Chips




**Figure 2.** Front label of Kettle Brand Avocado Oil Sea Salt Chips




**Figure 3.** Front label of Kettle Brand Avocado Oil Special Sauce Chips




**Figure 4.** Front label of Kettle Brand Avocado Oil Special Sauce Chips

36. To the extent that any of the front labels leave any doubt as to whether avocado oil is the only oil the chips are made with, that ambiguity is eliminated by the ingredient list on the

back label. The ingredient list identifies avocado oil as the sole oil. No other oils are disclosed in the ingredient list.




**Figure 5.** Back label of Kettle Brand Avocado Oil Sea Salt Chips




**Figure 6.** Back label of Kettle Brand Avocado Oil Special Sauce Chips




**Figure 7.** Back label of Kettle Brand Avocado Oil Spicy Kimchi Chips

37. Based on Defendant's representations—including the prominent reference to avocado oil on the front label, the image of an avocado, and the ingredient list on the back that lists avocado oil as the only oil in the product—reasonable consumers, including Plaintiff and Class members, understand and expect that Kettle Brand Avocado Oil chips are made solely with avocado oil and contain no other oils.

### C. Consumer Motivation: Health Concerns With Inferior Vegetable and Seed Oils and the Perceived Benefits of Avocado Oil

38. Avocado oil is a premium cooking oil that is significantly more expensive than common refined oils such as canola oil, sunflower oil, soybean oil, and corn oil. Consumers deliberately choose to pay a premium price for avocado oil products because avocado oil is

perceived as healthier, more natural, and of higher quality than seed oils. They also do so to avoid the consumption of inferior vegetable oils, like soybean oil, and seed oils, including canola oil, sunflower oil, safflower oil, and corn oil, and the negative health effects associated with these oils' consumption. Thus, consumers rely on product labeling when they deliberately choose to pay more for a product because the label specifically says it is made with avocado oil.

39. This consumer motivation is a central reason why Kettle Brand Avocado Oil products command a premium price and why Defendant prominently markets these products as made with avocado oil. Market research confirms this trend: as of 2024, over 42% of consumers in the United States reported switching from conventional oils to healthy, plant-based alternatives like avocado oil, driven by consumer awareness of its superior properties.[19] The global avocado oil market was valued at approximately $637 million in 2024 and is projected to reach over $1.1 billion by 2032, reflecting a compound annual growth rate of 6.0%.[20]

**D. Defendant's Knowledge and Intent**

40. Defendant knew or should have known that its Kettle Brand Avocado Oil chip products contained oils other than avocado oil. As the manufacturer of these products, Defendant has direct knowledge of and control over the ingredients used in its manufacturing process.

41. Defendant knew or should have known that its labeling representations, including the prominent "Avocado Oil" designations on the front, and the ingredient list on the back declaring avocado oil as the only oil in the product, were false and misleading.

---

[19] *Avocado Oil Market Size, Share, Growth, and Industry Analysis, By Type*, Market Reports World, https://www.marketreportsworld.com/market-reports/avocado-oil-market-14716152 (last visited September 17, 2026).

[20] *Global Avocado Oil Market Size, Share, and Trends Analysis Report – Industry Overview and Forecast to 2032*, Data Bridge Mkt. Rsch., https://www.databridgemarketresearch.com/reports/global-avocado-oil-market (last visited September 17, 2026).

42. Defendant intentionally chose to label its products as avocado oil chips and to charge a premium price based on this premium characteristic. Defendant did so because it knew that consumers would pay more for products they believed were made solely with premium avocado oil.

43. Defendant is no doubt aware that consumer preference for avocado oil is also driven by "clean label" trends and the growing consumer demand for foods made with natural, minimally processed, and transparently sourced ingredients. Market research confirms that "[r]ising demand for clean-label nutrition, premium culinary ingredients, and natural formulation inputs accelerates adoption of avocado oil across food manufacturing, retail consumption, and cosmetic innovation."[21] Consumers "increasingly evaluate nutritional value, ingredient transparency, and cooking performance," and avocado oil "is emerging as a preferred solution" because its nutritional profile "aligns with dietary preferences focused on heart health and natural nutrition."[22] "Health-focused consumers increasingly seek cooking oils rich in monounsaturated fats and antioxidants, while food companies leverage avocado oil to develop premium products that meet modern dietary expectations."[23]

44. Products labeled with avocado oil command a significant price premium over comparable products formulated with seed oils. The UC Davis Study found that chips labeled with avocado oil commanded premiums of up to 222% versus chips made with inferior oils.[24] This price

[21] *Growing Demand for Clean-Label Cooking Oils Accelerates the Global Avocado Oil Market*, PR Newswire (Jan. 2026), https://www.prnewswire.co.uk/news-releases/growing-demand-for-clean-label-cooking-oils-accelerates-the-global-avocado-oil-market--future-market-insights-302708127.html.

[22] *Id.*

[23] *Id.*

[24] *See* Lopez-Alvarez et al., *supra* note 3 at 4.

premium reflects consumer willingness to pay more for products that use avocado oil as opposed to inferior vegetable or seed oils. However, the UC Davis researchers noted that "retail price alone was not a reliable indicator of ingredient authenticity and consumers cannot rely on price alone as an indicator of authenticity."[25] Defendant, as a market participant selling avocado oil products at premium prices, knew or should have known that consumers purchasing such products reasonably expected that avocado oil was the one and only oil used in their chips and relied on Defendant's labeling to deliver that expectation.

45. Defendant's false and misleading labeling and marketing was designed to, and did, induce consumers, including Plaintiff and Class members, to purchase the Kettle Brand Avocado Oil chip products and to pay a premium price for those products based on the false belief that they would enjoy the benefits of chips cooked solely in avocado oil.

## CLASS ALLEGATIONS

46. Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiff brings this action on behalf of the following putative class (hereafter, "**Class**"): All persons in Arizona, California, Connecticut, Florida, Hawaii, Idaho, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, New York, Virginia, Washington State, and Washington D.C., who purchased Kettle Brand Avocado Oil chip products within the applicable statutes of limitation.

47. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors; those who purchased Kettle Brand Avocado Oil chip products for resale; those who make a timely election to be excluded from the Class; and the judge to whom the case is assigned and any immediate family members thereof.

[25] *Id.*

48. The Class Period begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, knowing concealment, and accrual issues, and ends on the date of entry of judgment.

49. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

50. **Numerosity**: The members of the Class are so numerous that joinder of all class members is impracticable. On information and belief, there are, at a minimum, hundreds of thousands of Class Members who purchased Kettle Brand Avocado Oil chip products during the Class Period. Kettle Brand Avocado Oil chips are sold at major grocery stores, big-box retailers, natural food stores, and online retailers throughout the United States. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

51. **Predominance of Common Questions of Law and Fact**: Questions of law and fact that are common to the members of the Class predominate over questions that are specific to individual members. These common questions of law and fact include, but are not limited to, the following:

a. Whether Defendant's labeling of Kettle Brand Avocado Oil chip products as being made with avocado oil, and only avocado oil, is false and/or misleading;

b. Whether Defendant's Kettle Brand Avocado Oil chip products contain oils other than avocado oil, including inferior vegetable and/or seed oils;

c. Whether Defendant knew or should have known that its product labeling is false and/or misleading;

d. Whether Defendant's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act and other analogous state consumer protection laws;

e. Whether Defendant was unjustly enriched;

f. Whether Plaintiff and Class members have suffered an ascertainable loss of monies or property or other value as a result of Defendant's deceptive and unlawful conduct; and

g. Whether Plaintiff and Class members are entitled to relief and, if so, the nature of such relief.

52. The consumer protection laws in the putative Class are materially identical with respect to the causes of action for deceptive trade practices alleged herein. Thus, the same deceptive conduct by Defendant that violates Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq*., simultaneously violates the consumer protection laws of the other identified states.

53. **Typicality**: Plaintiff's claims are typical of those of other Class Members because, like all members of the Class, Plaintiff purchased Kettle Brand Avocado Oil chip products bearing the same false and misleading labeling and relied on the same material misrepresentations regarding the oil content of those products.

54. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

55. **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy for the following reasons:

a. The economic loss suffered by each individual member of the Class does not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would pose a crushing burden on the court system for these cases to be litigated on an individual basis;

c. Absent a class action mechanism, Plaintiff and Class members will continue to suffer harm as a result of Defendant's unlawful conduct because individual litigation is wholly impractical and cost prohibitive; and

d. This action presents no difficulty that would impede its management by the Court as a class action.

## FIRST CAUSE OF ACTION

**False Pretenses, Promises, and Misrepresentations in Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1, et seq.**

56. Plaintiff incorporates the preceding paragraphs as if fully written herein.

57. Plaintiff brings this claim individually and on behalf of the Illinois members of the Class.

58. Plaintiff and other Class members are persons within the context of the Illinois Consumer Fraud and Deceptive Business Practices Act ("**ICFA**"), 815 ILCS 505/1, et seq.

59. Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

60. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

61. Plaintiff and Class members are "consumers" who purchased the Kettle Brand Avocado Oil chips for personal, family, or household use within the meaning of the ICFA, 815 ILCS § 505/1(e).

62. The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices," which includes "the use or employment of any . . . false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2.

63. A "claim for 'deceptive' business practices under the [ICFA] does not require proof of intent to deceive." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (citation omitted). Defendant, however, must intend for consumers to rely on the aspects of the labeling that are alleged to be deceptive.

64. As with other sophisticated corporate entities, Defendant intentionally designs the packaging and labeling of Kettle Brand Avocado Oil chip products, including the false and deceptive elements described in paragraphs 35 to 45, to entice the target audience to purchase said products.

65. Defendant's labeling of its Kettle Brand Avocado Oil chip products is deceptive in that it conveys that the chips are made using avocado oil, and only avocado oil. This is false and misleading because the UC Davis Study and independent third-party testing show that, if avocado oil is even present in the chips, it is *not* the only oil. The other oil(s) present in the product are *not* disclosed on the label. The label thus simultaneously provides the false impression that avocado oil is the only oil, while concealing/suppressing that other, inferior, oils are present.

66. Defendant intends for consumers to rely on the label's false pretenses, false promises, misrepresentation, and concealment, whether or not it knows these are false and/or misleading.

67. Reasonable consumers, including Plaintiff and Class Members, rely and act upon said false and misleading representations.

68. Plaintiff and Class Members relied on Defendant's deceptive labeling and suffered actual loss as a proximate result. Specifically, Defendant's deceptive labeling caused Plaintiff and Class Members to (i) purchase products they never would have purchased absent the deception (i.e., Plaintiff would not have purchased the products had she known that avocado oil was not the one and only oil used in the chips), and (ii) pay more on the products than they would have paid absent the deception.

69. Through said violations of the ICFA, Defendant has been unjustly enriched, and continues to be unjustly enriched, by unfairly obtaining money from members of the Class.

70. Based on Defendant's deceptive acts and practices, Plaintiff and the Illinois Class members are entitled to relief under 815 ILCS §505/10a.

## SECOND CAUSE OF ACTION
**Deceptive Business Practices in Violation of Other Similar State Statutes Identified Herein**

71. Plaintiff incorporates the preceding paragraphs as if fully written herein.

72. Plaintiff brings this claim on behalf of the Arizona, California, Connecticut, Florida, Hawaii, Idaho, Massachusetts, Minnesota, Missouri, New Jersey, New York, Virginia, Washington State, and Washington D.C. members of the Class.

73. As described above, including but not limited to paragraphs 35 to 45, Defendant has engaged in deceptive practices in its labeling, marketing, and sale of Kettle Brand Avocado

Oil chip products. Through these deceptive practices, Defendant represents that Kettle Brand Avocado Oil chips are made with avocado oil, and only avocado oil. This is false and misleading because the UC Davis Study and independent third-party testing show that, if avocado oil is even present in the chips, it is *not* the only oil. The other oil(s) present in the product are *not* disclosed on the label. The label thus simultaneously provides the false impression that avocado oil is the only oil, while concealing/suppressing that other, inferior, oils are present.

74. Through this deceptive conduct, which violated, and continues to violate, the ICFA (815 ILCS 505/2), Defendant has simultaneously violated, and continues to violate, the following state consumer protection statutes:

a. Arizona (A.R.S. § 44-1521, et seq.);

b. California (Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Bus. & Prof. Code § 17500 et seq.; & Cal. Civ. Code § 1750, et seq.);

c. Connecticut (Conn. Gen. Stat. § 42-110a, et seq.);

d. Florida (Fla. Stat. § 501.201, et seq.);

e. Hawaii (HRS § 481A-1, et seq.);

f. Idaho (Idaho Code § 48-601, et seq.);

g. Massachusetts (Mass. Gen. Laws ch. 93A);

h. Minnesota (Minn. Stat. § 325F.68, et seq.);

i. Missouri (Mo. Rev. Stat. § 407.005, et seq.);

j. New Jersey (N.J.S.A. § 56:8-1, et seq.);

k. New York (NY GBL §§ 349-50);

l. Virginia (Va. Code Ann. § 59.1-196, et seq.);

m. Washington (Wash. Rev. Code § 19.86.010, et seq.); and

n. Washington D.C. (D.C. Code § 28-3904, et seq.).

75. Defendant intends for consumers to rely on these false pretenses, promises, and misrepresentations, whether or not Defendant actually knows these representations are false and/or misleading.

76. Reasonable consumers rely and act upon said false and misleading representations.

77. Plaintiff and Class Members relied on Defendant's deceptive labeling and suffered economic harm as a proximate result of this reliance. Specifically, Defendant's deceptive conduct caused Plaintiff and Class Members to: (i) purchase products they never would have purchased absent the deception (i.e., Plaintiff would not have purchased the products had she known that avocado oil was not the one and only oil used in the chips), and (ii) pay more for the products than they would have paid absent the deception.

78. Through its deceptive acts and practices, Defendant has been unjustly enriched, and continues to be unjustly enriched, by unfairly obtaining money from members of the Class.

79. Based on Defendant's deceptive acts and practices, Plaintiff and the Class members are entitled to relief under the aforementioned state statutes.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully request that the Court enter judgment against Defendant as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as Class counsel and Plaintiff as Class Representatives;

B. An award of compensatory damages in an amount to be determined at trial;

C. An award of restitution and/or disgorgement in an amount to be determined at trial, except as to those causes of action where restitution/disgorgement is not available by law;

D. An award of statutory damages in an amount to be determined at trial, except as to those causes of action where statutory damages are not available by law;

E. An award of treble damages, except as to those causes of action where treble damages are not available by law;

F. An award of punitive damages in an amount to be determined at trial, except as to those causes of action where punitive damages are not available by law;

G. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H. For reasonable attorneys' fees and the costs of suit incurred; and

I. For such further relief, including but not limited to declaratory and injunctive relief, as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

Dated: September 17, 2026

Respectfully Submitted,

**SIRI & GLIMSTAD LLP**

By: */s/ Michael Connett*
Michael Connett
Catherine Ybarra
700 S. Flower St., Suite 1000
Los Angeles, CA 90017
mconnett@sirillp.com
cybarra@sirillp.com
Tel: (888) 747-4529

Elizabeth A. Brehm
745 Fifth Avenue, Suite 500

New York, NY 10151
ebrehm@sirillp.com
Tel: (888) 747-4529

*Attorneys for Plaintiff and Putative Class*